(115 So. 57)

No. 26813.

**ODIER et al. v. SCHEXNAYDRE et al.**

Nov. 28, 1927.

*(Syllabus by Editorial Staff.)*

Landlord and tenant ☞249(1)—Merchants receiving from tenant crops raised to satisfy advances with proceeds, though knowing of landlord's privilege, held not liable for rent.

Merchants to whom lessee of land sent rice raised on the leased premises to sell and apply proceeds on the advances made by them to enable lessee to operate, having so sold it and applied the proceeds, though knowing it was subject to landlord's privilege, are not personally liable to the landlord for the rent secured by the privilege, which was not seasonably exercised, there being no surplus from the proceeds over and above the advances.

Appeal from Civil District Court, Parish of Orleans; M. M. Boatner, Judge.

Action by L. M. Odier and others against A. J. Schexnaydre and others. From an adverse judgment, plaintiffs appeal. Affirmed.

L. H. Gosserand, of New Orleans, for appellants.

A. M. Suthon, of New Orleans, for defendant appellees.

Henry & Cooper, of New Orleans, for garnishee appellee.

THOMPSON, J. The plaintiffs leased to the defendants for the year of 1920 their plantation, known as Live Oak, situated in the parish of Jefferson.

The price of the lease was $3,380, and was evidenced by a note signed by all three of the defendants and payable on September 15, 1920.

The defendants resided in the parish of St. Charles, and owned in said parish certain tracts of land formerly belonging to or constituting what was known as Ormond plantation. These tracts, as well as the one leased from the plaintiffs, were cultivated in rice during the year 1920.

In the early part of that year the defendants made arrangements with Le Bourgeois & Bush, Inc., of this city, for advances and supplies on which to operate the said plantations, executing in favor of said firm a crop lien and pledge on all of the crops raised during said year on the plantations owned by them as well as the one leased from the plaintiffs. The amount stipulated in the act of pledge was $25,000, but the amount actually advanced was over $65,000.

As the rice was harvested and threshed, it was shipped to the New Orleans merchants, was sold by them, and the proceeds applied to the payment of defendants' account.

No part of the plaintiffs' rent was paid by either the defendants or their New Orleans factors.

When demand was made on defendants by the plaintiffs for the rent, they simply said that they could not pay because they had not sufficient funds. And when the defendants informed their merchants that demand had been made for the rent, the merchants gave a similar answer—they had no funds.

Having remained inactive until practically all of the rice crop on the leased premises was shipped to New Orleans and sold by Le Bourgeois & Bush, the plaintiffs filed the present suit in the civil district court of New Orleans against the lessees, who, as we have stated, resided in the parish of St. Charles.

Writs of provisional seizure and attachment were obtained, and Le Bourgeois & Bush were served therewith and made garnishee, with the usual interrogatories propounded.

In answer to the interrogatories, Le Bourgeois & Bush alleged that they were not indebted to the defendants and had no property or money of the defendants in their possession or under their control. It was alleged that respondent advanced to the de-

fendants money for the purpose of making and harvesting a rice crop, taking a pledge thereon, and as such pledge said rice was shipped to it.

The garnishee further answered that it had placed 50 sacks of rough rice, received by the defendant, with a rice milling company to be sold by it on the market and to account to it for the proceeds, which said proceeds amounted to $150. This 50 sacks, however, was not raised on the leased premises.

The plaintiff filed a rule to traverse the answer of the garnishee, and the defendants filed an exception to the jurisdiction of the court ratione personæ.

Thereafter, with reservations of all their rights under the exception to the jurisdiction, the defendants answered.

On a trial, the demand of the plaintiffs was rejected, the writs of provisional seizure and attachment were dissolved, and the garnishee discharged.

There is no allegation or proof of any fraud or collusion between the defendants and Le Bourgeois & Bush, nor is there any contention that Le Bourgeois & Bush promised to pay the rent to the plaintiffs.

The case, as presented by the pleadings and evidence, is one where the lessors, after the maturity of their rent, permitted their lessees to ship all of the rice off of the leased premises to the merchants who had advanced the supplies to make the crop, which rice the said merchants in good faith sold in open market, and applied the proceeds in payment of their account against the lessees.

It is conceded that the rice was shipped to and sold by the merchants more than 15 days before this suit was filed. Indeed, the rent was due in September, 1920, the rice was shipped and sold in the fall of 1920, and this suit was not filed until April 2, 1921.

It is contended for plaintiffs that Le Bourgeois & Bush, being the factor of the lessees and having full knowledge of the rights and privileges of the lessors on the crop for unpaid rent, and who was aware that the rent had not been paid, cannot be treated as a third person, but must be regarded as the agent of the lessees.

The case of Tupery v. Edmondson, 32 La. Ann. 1146, is relied on to support the contention.

In that case, however, the consignees of the rice had full knowledge that plaintiff, Tupery, owned one-third of the crop. They had expressly recognized the landlord's privilege and lien, and had, indeed, promised to pay the rent out of the property consigned to them. Besides, the rice had not been sold, but was seized in the possession of the consignee.

In such circumstances, the court held that the consignees could not be treated as third persons, rendering necessary the affidavit required as to the property being removed from the leased premises within 15 days previous to the institution of the suit.

In a later case, however, that of Carroll v. Bancker, 43 La. Ann. 1078, 1194, 10 So. 187, the court held, quoting from the syllabus, that:

"Plaintiff's privilege as lessor upon the crop of sugar and molasses, was lost by him, as he did not, in accordance with article 2709 of the Civil Code and article 288 of the Code of Practice, seize it before it was shipped to the market to be sold, nor within 15 days after it had been removed from the leased plantation."

The last case we have been able to find which deals directly with the issue here involved, and which in our opinion settles it adversely to the contention of the plaintiffs, is the case of Duke v. Crawford, Jenkins & Booth, 150 La. 1024, 91 So. 440.

In that case the lessees of plaintiff had obtained supplies for making their crops of 1918, 1919, and 1920 from Crawford, Jenkins & Booth, and each year shipped their cotton to their merchants to be sold. The crops of 1918 and 1919 were sufficient to pay the rent

and supply bill, but the crop of 1920 was not sufficient to pay the supply bill, and the merchants who had received and sold the cotton and applied the proceeds on their account refused to pay the rent.

The lessor sued Crawford, Jenkins & Booth for the rent, on the theory that when they received the cotton, they knew that it was burdened with the lessor's lien and privilege.

The court dismissed the plaintiff's suit, holding that one purchasing cotton subject to a landlord's privilege and disposing of it in good faith does not thereby become personally liable for the rent secured by the privilege.

That is precisely what the plaintiff is seeking to do in this suit and what the court held could not be done; that is, to hold the merchants of the lessees personally liable for the rent because they had received the rice which had been burdened with the lessors' pledge, and had sold the same in open market, and applied the proceeds to the payment of their account against the lessees.

The judgment appealed from is therefore affirmed.